IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 7, 2014

## JAMES GARRETT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 11-04659      Lee V. Coffee, Judge**

**No. W2012-01994-CCA-R3-PC  -  Filed April 10, 2014**

The petitioner, James Garrett, appeals the post-conviction court's denial of his petition for post-conviction relief from his carjacking and employing a firearm during the commission of a dangerous felony convictions. He argues that he is entitled to relief because he received ineffective assistance of counsel, rendering his guilty pleas unknowing and involuntary, and his conviction for employing a firearm during a dangerous felony violates the terms of Tennessee Code Annotated section 39-17-1324(c) and the prohibitions against double jeopardy. After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR. and ROGER A. PAGE, JJ., joined.

James P. DeRossitt, IV, Memphis, Tennessee, for the appellant, James Garrett.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Susan Taylor, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

The petitioner pled guilty to carjacking and employing a firearm during the commission of a dangerous felony and was sentenced to consecutive terms of eight years and six years, respectively. As required by law, he was ordered to serve the six years for the conviction of employing a firearm during the commission of a dangerous felony at 100% release eligibility. A transcript of the guilty plea hearing is not in the record before us, but

we glean from the technical record and transcript of the post-conviction hearing that the petitioner approached the victim and, armed with a gun, took her purse containing a designer wallet and keys to her car and then drove off in her car.

On March 23, 2012, the petitioner filed a *pro se* petition for post-conviction relief and, after the appointment of counsel, two amended petitions. Among the allegations raised in his petitions, the petitioner argued that he received ineffective assistance of counsel, rendering his guilty pleas unknowing and involuntary, and his conviction for employing a firearm during a dangerous felony violated the terms of Tennessee Code Annotated section 39-17-1324(c) and the prohibitions against double jeopardy.

The post-conviction court conducted an evidentiary hearing, at which the petitioner testified that counsel represented him for approximately two months, and he only met with her at his three court appearances and on the day he pled guilty. He estimated that he and counsel spent a total of six minutes discussing his case. The petitioner acknowledged that this case was not his first exposure to the criminal justice system.

The petitioner testified that after he pled guilty, he researched his case and determined that his sentence was unlawful. He said that he raised concerns of the legality of his sentence with counsel prior to pleading guilty, and counsel told him that she would speak to the prosecutor. The petitioner stated that he decided to plead guilty because counsel "wasn't attacking what I wanted her to do, so I figured in trial she wasn't going to do it either[.]" He believed he had only committed a robbery, not a carjacking, because he only demanded money from the victim.

On cross-examination, the petitioner admitted that he gave a statement to police in which he said, "I was just looking for somebody so that I could take their car" and "I saw the lady and walked up to her, pointed the gun at her and told her to give me the keys," which constituted a carjacking. He claimed that just before the incident, he had been on a week and a half crack cocaine binge and had spent all of his student loan money. The petitioner recalled that counsel told him he would only have to serve 30% of his sentence and that he possibly faced a sentence of forty years if he went to trial. He stated that he wanted counsel to try to get the gun charge dismissed and allow him to enter a guilty plea on the carjacking charge with a release eligibility of 30%. The petitioner felt that counsel "was an agent of the State because everything [he] asked her to do, she did the opposite of it." He claimed that he decided to plead guilty, accept his incarceration, and use it as an opportunity to learn about the law in Tennessee. He said that he would not have pled guilty if he "was represented like . . . it was intended for [him] to be represented." Upon questioning by the court, the petitioner said that he lied on the day of his guilty plea when he said that counsel had done a good job representing him.

Trial counsel, an eighteen-year veteran of the public defender's office, testified that she provided the petitioner with a copy of his indictment on his arraignment day and sent the discovery to him on a later date. She recalled discussing the petitioner's concerns about the firearm offense, elaborating that the petitioner believed that offense required that he have a prior dangerous felony conviction. She reviewed the statute with him and explained that he could be charged with both carjacking and employing a firearm in the commission of a dangerous felony. The petitioner initially told her that he wanted to go to trial if the State would not dismiss the firearm charge.

Counsel recalled that she reviewed the discovery with the petitioner. She also discussed the petitioner's statement to police with him, as well as the victim's statement. The petitioner questioned the high amount of restitution, which counsel discussed with the prosecutor. The prosecutor indicated that the victim did not get her "extraordinarily expensive" designer wallet back after the petitioner stole it. Counsel recalled that the petitioner did not give her the names of any witnesses to investigate on his behalf. She said that the petitioner's "main problem the entire time [she] talked with him" was the fact he did not have a prior dangerous felony conviction and believed that he could not therefore be charged with employing a firearm in the commission of a dangerous felony. Counsel discussed the petitioner's concerns with him "at great length and, in fact, even went and got the statute . . . book and went through it with him because [she] wanted to make quite sure [she] could point it out to him in the different subsections."

Counsel testified that she discussed with the petitioner his potential exposure in the event of a trial. She explained to him that the State was aware that he had prior felony convictions in other states, which it could use to increase his exposure. She knew that the petitioner was not happy with his plea due to the firearm charge, but he felt it was in his best interest to accept the plea. The petitioner never expressed any concerns to counsel about her representation, and she felt that they had a good working relationship. She obtained the minimum Range I offer, even though he was likely more than a Range I offender. It was her understanding "that it was never going to be any better than this and that anything that made us go any further, it was going to get worse, and it would be worse for him." Asked whether she was in some way working with the State against the petitioner, counsel stated:

> No. It is unfortunate that with some clients that you have, that you don't have the good news to tell them, and some people take it that you're not trying. Some people say that you are working against them, but, unfortunately, with some cases, and in this particular one, the things that he asked for were things that were well beyond my ability to grant, and there wasn't anything I could do to get rid of the charge against him.

If he wanted to go to trial, I was more than happy to try the case, and I would have done the best job I can. I've done a lot of trials. I wish I had been able to tell him the kind of things he wanted to hear, but what he asked for was beyond my ability to give.

On cross-examination, counsel testified that she did not think that going to the jail and speaking with the petitioner there would have been any better than their meeting in the lock-up area of the courtroom. Regarding her investigation of the case, counsel said that the petitioner did not give her anything to investigate but that she listened to the tape of the preliminary hearing and reviewed the petitioner's discovery with him, including his and the victim's statements. Counsel denied the petitioner's claim that she promised him parole. She explained, "I never in my eighteen years have ever promised any client, not only parole, but probation, or the outcome at a trial because all of those are things that are beyond my control."

The post-conviction court denied the petition, finding that counsel provided effective assistance and that the petitioner's guilty pleas were knowingly and voluntarily entered. The court discredited the petitioner's testimony because he admitted having committed perjury at the plea hearing. The court also found that the petitioner's legal argument concerning double jeopardy must fail.

## ANALYSIS

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a post-conviction court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); Burns v. State, 6 S.W.3d 453, 461 (Tenn. 1999).

## I. Ineffective Assistance of Counsel and Knowingness of Pleas

The petitioner argues that he received ineffective assistance of counsel, rendering his guilty pleas unknowing and involuntary.

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he or she would not have pled guilty but would instead have insisted on proceeding to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); House v. State, 44 S.W.3d 508, 516 (Tenn. 2001).

Before a guilty plea may be accepted, there must be an affirmative showing in the trial court that it was voluntarily and knowingly entered. Boykin v. Alabama, 395 U.S. 238, 242 (1969); State v. Mackey, 553 S.W.2d 337, 340 (Tenn. 1977). This requires a showing that the defendant was made aware of the significant consequences of the plea. State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999) (citing Mackey, 533 S.W.2d at 340). A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if

the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) the defendant's familiarity with criminal proceedings; (3) whether the defendant was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against the defendant and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

The petitioner asserts that counsel's representation of him was "cursory, slipshod, and cavalier" and that there was a "complete breakdown in communication" between him and counsel, causing him to "surrender[] his privilege against self-incrimination under circumstances that were not fully knowing, voluntary, and intelligent[.]"

The post-conviction court explicitly discredited the petitioner's testimony at the evidentiary hearing and accredited counsel's testimony. Counsel testified that she met with the petitioner, reviewed the discovery material, and discussed his exposure in the event of a trial. She stated that she discussed the petitioner's various concerns regarding the firearm charge with him and noted that "the things that he asked for were things that were well beyond my ability to grant, and there wasn't anything I could do to get rid of the charge against him." Counsel felt like she and the petitioner communicated well with one another. She said that the petitioner was not happy with the firearm charge being included in the plea agreement but that he thought it was in his best interest to accept the plea. The record shows that the petitioner, who is relatively intelligent and familiar with criminal proceedings, was represented by competent counsel with whom he had the opportunity to confer about his alternatives. Counsel and the trial court gave the petitioner exhaustive advice about his charges and possible penalties he faced, and he entered a plea to avoid a potentially much harsher result at a trial. Accordingly, the record shows that the petitioner received effective assistance of counsel and that he knowingly and voluntarily pled guilty.

## II. Tennessee Code Annotated section 39-17-1324(c) and Double Jeopardy

The petitioner argues that his conviction for employing a firearm during a dangerous felony violates the terms of Tennessee Code Annotated section 39-17-1324(c) and the prohibitions against double jeopardy.

The statute in question provides, in pertinent part, as follows:

>    (a) It is an offense to possess a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony.
>
>    . . . .
>
>    (c) A person may not be charged with a violation of subsection (a) or (b) if possessing or employing a firearm is an essential element of the underlying dangerous felony as charged.  In cases where possession or employing a firearm are elements of the charged offense, the state may elect to prosecute under a lesser offense wherein possession or employing a firearm is not an element of the offense.
>
>    . . . .
>
>    (i) As used in this section, unless the context otherwise requires:
>
>    (1) "Dangerous felony" means:
>
>    . . . .
>
>    (D) Carjacking, as defined in § 39-13-404[.]

Tenn. Code Ann. § 39-17-1324(a), (c), (i)(1)(D).

The Double Jeopardy Clause of the United States Constitution states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb[.]"  U.S. Const. amend. V.  Article I, section 10 of the Tennessee Constitution similarly provides "[t]hat no person shall, for the same offence, be twice put in jeopardy of life or limb."  In State v. Watkins, 362 S.W.3d 530 (Tenn. 2012), our supreme court abandoned the State v. Denton, 938 S.W.2d 373 (Tenn. 1996), four-factor test previously employed by Tennessee courts in determining whether dual convictions violate the prohibition against double jeopardy.  Instead, the court adopted the same elements test enunciated by the United States Supreme Court in Blockburger v. United States, 284 U.S. 299, 304 (1932).  Under the Blockburger test, the threshold inquiry is whether the defendant's convictions arose from the same act or transgression.  Watkins, 362 S.W.3d at 545.  If the convictions do not arise from the same act or transgression, the state and federal prohibitions against double jeopardy are not implicated, and the inquiry ends.  Id.

If, however, the convictions arose from the same act or transgression, the court must then determine whether the legislature intended to allow the offenses to be punished separately. Id. at 556. When the legislature has not clearly expressed its intent either to prevent or to preclude the dual convictions, the court must examine the statutes to determine whether the crimes constitute the same offense. Id. at 557. "The court makes this determination by examining statutory elements of the offenses in the abstract, rather than the particular facts of the case." State v. Cross, 362 S.W.3d 512, 520 (Tenn. 2012) (citations omitted). "[I]f each offense includes an element that the other does not, the statutes do not define the 'same offense' for double jeopardy purposes," and courts "will presume that the Legislature intended to permit multiple punishments." Watkins, 362 S.W.3d at 557.

The offense of carjacking may be committed in either of two ways: by use of a deadly weapon, or by force or intimidation. Tenn. Code Ann. § 39-13-404(a).

Again, the petitioner argues that his conviction for the firearm offense violates the statute and the prohibitions against double jeopardy because, although he was indicted for committing the carjacking by force or intimidation, he used a firearm to cause the force and intimidation. He bases his argument on an extension of this court's opinion in Anthony D. Byers v. State, No. W2011-00473-CCA-R3-PC, 2012 WL 938976 (Tenn. Crim. App. Mar. 15, 2012), perm. app. denied (Tenn. Aug. 15, 2012). In Byers, this court granted post-conviction relief after determining that section 1324(c) had been contravened by that petitioner's convictions of especially aggravated kidnapping and possessing a firearm during the commission of a dangerous felony, which rendered the firearm conviction void. Id. at *8-9. In that case, the petitioner was indicted for committing the underlying dangerous felony by use of a deadly weapon, and the State argued that there was a substantive distinction between "deadly weapon" and "firearm." Id. at *8. This court disagreed with the State's argument, noting:

> If the State could avert the constraints of the statute by always using the term "deadly weapon" instead of "firearm" when the deadly weapon at issue was clearly and solely a firearm, then section 1324(c) would essentially become meaningless because the State would never use the term "firearm" in an indictment. We cannot believe that it was our legislature's intent to draft a statute that could so easily be circumvented with a simple change of phraseology in the indictment.

Id. at *9.

Moreover, other panels of this court have rejected the same arguments raised by the petitioner in this case. See Oscar Thomas v. State, No. W2012-01646-CCA-R3-PC, 2013

WL 5761398, at *5-8 (Tenn. Crim. App. June 28, 2013); State v. Jeremiah Dawson, No. W2010-02621-CCA-R3-CD, 2012 WL 1572214, at *5-7 (Tenn. Crim. App. May 2, 2012), perm. app. denied (Tenn. Sept. 20, 2012). In the Dawson case, the defendant was convicted of aggravated robbery, carjacking, and employing a firearm during the commission of a dangerous felony. Id. at *1. On direct appeal, the defendant argued that his "dual convictions for carjacking and employing a firearm during the commission of a dangerous felony violate[d] double jeopardy because[, even though he had been charged with carjacking by force or intimidation,] he used the firearm to intimidate the victims during the carjacking." Id. at *5.

This court rejected the defendant's argument. The panel looked at the statutory language of section 1324(c) and emphasized that the statute prohibits prosecution when "'possessing or employing a firearm is an essential element of the underlying dangerous felony *as charged*.'" Id. at *6 (quoting Tenn. Code Ann. § 39-17-1324(c)) (emphasis added in Dawson). The panel concluded that the use of the term "as charged" by the legislature indicated that "the legislature was authorizing, even encouraging, the State strategically to indict a defendant for both felonies." Id. at *7. Accordingly, this court concluded that the dual convictions did not violate double jeopardy because "the legislature clearly intended to permit multiple punishment for carjacking by use of force or intimidation and employing a firearm during the commission of a dangerous felony." Id. This court further concluded that "the State's charging carjacking by use of force or intimidation and employing a firearm was not in direct contravention to Tennessee Code Annotated section 39-17-1324(c)." Id.

Likewise, in Oscar Thomas, 2013 WL 5761398, the petitioner challenged his guilty plea convictions for carjacking and employing a firearm during the commission of a dangerous felony on grounds that the dual convictions violated section 39-17-1324(c). Id. at *5-6. The petitioner in Oscar Thomas relied on Anthony D. Byers in support of his argument. The Oscar Thomas panel relied on the Jeremiah Dawson decision and then distinguished Anthony D. Byers as follows:

> Contrary to Byers, in the instant case, the State was not playing "fast and loose" with the language with which it charged the Petitioner with carjacking. Cf. Anthony D. Byers, 2012 WL 938976, at *9. Rather, the State had an option, expressly provided by the statutory language, as to how it charged the Petitioner with carjacking. It chose, legitimately, to charge the Petitioner with having committed carjacking by force or intimidation. The use of a firearm is not an essential element of a carjacking alleged to have been committed by force or intimidation. That a firearm may have been the means of accomplishing the force or intimidation in a particular case does not transform the use of the firearm into an essential element of the carjacking.

Accordingly, the Petitioner's conviction of employing a firearm during the commission of a dangerous felony does not contravene section -1324(c). Therefore, he is not entitled to post-conviction relief on this basis.

Oscar Thomas, 2013 WL 5761398, at *8. We wholeheartedly agree with this distinction and determine that the panel's reasoning is also the appropriate reasoning in this case. We, therefore, conclude that the petitioner's convictions for carjacking and employing a firearm during the commission of a dangerous felony do not violate the terms of Tennessee Code Annotated section 39-17-1324(c) or the prohibitions against double jeopardy.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the post-conviction court.

_____
ALAN E. GLENN, JUDGE